UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CR-00079-BO-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| ) | DEFENDANT'S PRO SE MOTION |
| SUERENZA TYRE NIXON, ) | FOR COMPASSIONATE RELEASE |
| ) | |
| Defendant. ) | |

Mr. Suerenza Tyre Nixon, through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with a combination of high-risk factors. Upon information from Mr. Nixon and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Nixon has properly exhausted his administrative remedies. A copy of his requests for administrative remedies has been requested, but due to delays with the Bureau of Prisons in providing items and the need for the prompt filing of this matter, further proof of exhaustion of administrative remedies will need to be submitted in a supplemental filing.

Mr. Nixon suffers from high blood pressure, anxiety, and difficulty with his eyesight. PSR at ¶ 57. [D.E. 62]. *See* **Exhibit A**, BOP Medical Records. Mr. Nixon requires daily prescriptions medications such as Lisinopril, Hydrochlorothiazide to treat his high blood pressure. *See* **Exhibit A** at 27. On multiple occasions, Mr. Nixon has submitted written complaints to the detention center's medical department,

1

alerting them that they were providing him with the incorrect medications. *See* **Exhibit A** at 20-21, 23.

While detained and unable to comply with reasonable social distancing and hygienic COVID-19 precautions recommended by the CDC, Mr. Nixon is exposed to the most hazardous COVID-19 complications with his particular combination of risk factors. Additionally, given that the BOP has previously blundered his medication, Mr. Nixon's anxiety during this pandemic is particularly exasperated, which in turn further deteriorates his health. This is a terrible and vicious cycle wherein Mr. Nixon is inhumanely victimized and not just punished for his past wrongdoings. Accordingly, this is no longer a sentence which accords with the sentencing objectives of 18 U.S.C. Section 3553(a).

Mr. Nixon is currently housed at the low security FCI Fort Dix in New Jersey where the detained population is around 2,774 total inmates, according to the Federal Bureau of Prisons. Staff members and inmates have already been infected with COVID-19 at FCI Fort Dix at higher rates than the general population. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) According to a National Commission on COVID-19 and Criminal Justice report released September 2020 on the impact of COVID-19 in U.S. State and Federal Prisons, the COVID-19 mortality rate within prisons is twice as high as the general population's morality rate and the rate of COVID-19 infections is over four times as high as the general population. *Schnepel,*

Case 7:15-cr-00079-BO   Document 71   Filed 11/15/20   Page 2 of 20

*Kevin T.* COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice (September 2020). New outbreaks of COVID-19 have increased rapidly in recent months, which is particularly concerning when the United States has the largest incarcerated population in the world at about two million detainees. *Schnepel* (2020). The mortality rate for Black Americans with COVID-19 is twice that of white Americans and Black Americans are incarcerated five times more often than white Americans. *Id.* Due to Mr. Nixon's race, incarceration in the United States, and his medical history, he is at a heightened risk of COVID-19 mortality, presenting extraordinary and compelling reasons for his compassionate release.

As most judges from the Eastern District of North Carolina have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Nixon's sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Nixon's immediate case as well. For example, *see United States v. Bradford,* 5:01-cr-128-BO-1 (E.D.N.C. Jul. 30, 2020).

## STATEMENT OF FACTS

On August 25, 2015, Mr. Nixon was indicted in a one-count indictment. [D.E. 1]. Mr. Nixon pled guilty on June 23, 2016 to one count of conspiracy to distribute and possess with intent to distribute five hundred grams or more of cocaine and a quantity of cocaine base (crack), in violation of 21 U.S.C. § 846. [D.E. 32]. On November 16, 2016, this Court sentenced Defendant to 151 months' imprisonment, ten years'

3

supervised release, and ordered Defendant to pay a $100 special assessment. [D.E. 42]. On September 4, 2020, Defendant filed the present motion requesting compassionate release. [D.E. 62]. Defendant is currently in custody of Fort Dix FCI and has an anticipated release date of November 28, 2023. *See* [https://www.bop.gov/inmateloc/; Number 55773-056; last visited November 13, 2020].

The current COVID-19 outbreak has not been contained in the United States and most certainly not within our prison walls either. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to

4

employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Nixon is unfortunately vulnerable to hospitalization and even death once he contracts COVID-19 in a matter of time due to his combined risk factors of incarceration, race, medical and prescription history, high blood pressure, high cholesterol, tuberculosis, and anxiety. *See* CDC information on 'People with Certain Medical Conditions': https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed November 13, 2020). Due to the combination of risk factors, proven through statistics and medical reports,

5

Mr. Nixon's request for compassionate release qualifies under the guidelines as 'extraordinary and compelling' reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when the defendant is—

(I)     suffering from a serious physical or medical condition;
(II)    suffering from a serious functional or cognitive impairment; or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii).  Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Nixon's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission.  *See* BOP Program Statement 5050.49.  During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible

candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress thankfully acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States*

*v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Mr. Nixon's combined risk factors of race, incarceration, and prescription medication and medical history make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Nixon posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Nixon's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *United States v. Brooker (Zullo)*, No. 19-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125,

8

page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the strength and love from one's family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate

because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Clearly, our Federal District Courts across our nation have been the single most important factor in ensuring that the Sentencing factors under 18 U.S.C. Sect. 3553(a) are met while balancing them through the lens of a detrimental pandemic in an important case by case analysis. This Honorable Court has also properly applied its wise discretion in under the First Step Act in using Compassionate Release, (as undersigned is respectfully requesting such relief herein as well.) Some of these cases are cited below to identify the range of which Federal Courts across the country are rightfully granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes,

hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria*, No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. ... Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of the courts in the compassionate release process, vesting them with the appropriate authority to determine what constitutes extraordinary and compelling reasons for release. This global pandemic, as applied to Mr. Nixon with his current combination of diagnoses and high-risk factors if he were to contract COVID-19, equates to an extraordinary and compelling circumstance.

## B. Mr. Nixon's Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

12

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the charts below demonstrate.





Amid this rapidly-unfolding crisis, the recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1]  Mr. Nixon is exactly the type of individual deserving of compassionate release: he is at risk of severe illness with high risk factors for a possible death sentence and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Rios' Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Nixon's compromised physical health, and the unique and dire circumstances awaiting him upon contracting COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

---

[1]  For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.* The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.*

The court shall impose a sentence that is sufficient but "not greater than necessary" to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D). "[A]lthough defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances. *United States v. Lee*, 2020 WL 3422772, at *5 (E.D. Va. June 22, 2020). *United States v. Mel*, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

The nature and circumstances of this offense weigh in favor of a reduction of sentence. The indictment did not allege any violent behavior by Mr. Nixon or any conduct which would endanger the community in the future. There was "no identifiable victim." PSR at ¶ 10. Mr. Nixon has been detained since his arrest on August 26, 2015, which is sufficient deterrence for a crime motivated at least in part by the lack of equal opportunity and access to financial stability.

Just punishment for the offense has already been administered. Years of being detained with an anxiety disorder while seeing the COVID-19 pandemic close in around him has now been sufficient but not greater than necessary punishment for Mr. Nixon. PSR at ¶ 58 ("the defendant suffers from anxiety attacks and was

15

prescribed an unknown medication in 2011 to treat the same. Nixon indicated he has experienced anxiety for quite a few years, although he has never received counseling.") Current detention conditions are deterrent enough at this time to reduce the risk of recidivism, but Mr. Nixon has also received care and counseling while detained that would diminish his odds of recommitting.

Mr. Nixon's anticipated release date is November 28, 2023. Taking into account that he was scheduled to 151 months, it would not meaningfully reduce the lengthy punishment or the wake-up-call-type impact of having received such a sentence. It would not meaningfully benefit our justice system to have Mr. Nixon remain under the care and custody of the state for the remaining three years when he is sufficiently rehabilitated and has sufficient incentive to comply with supervised release. Mr. Nixon's children, Kimorra Nixon, 14, Serenity Nixon, 14, and Amir Washington, 11, live in North Carolina and would benefit greatly from being reunited with their father and from having his added emotional and financial support during this difficult time. PSR at ¶ 56. Having a family support network in the area will help ensure that Mr. Nixon stays on a responsible path.

Mr. Nixon has received adequate rehabilitation and vocational training while in correctional custody and now needs to be released to receive adequate medical treatment and preventative care in the most effective and appropriate manner.

Any further detention of Mr. Nixon during this time would be to continue a sentence that is greater than necessary, particularly when "prisons now are even more dangerous than we typically accept." *United States v. Brown,* No. 4:05-CR-

00227-1, 2020 WL 2091802, at *2 (S.D. Iowa Apr. 29, 2020). Mr. Nixon has served over half of his sentence which reflects the seriousness of the offense, but which takes into account that his offenses were non-violent and related to a lack of access to financial opportunities. Mr. Nixon has also been experiencing panic attacks while detained, even before the outbreak of the COVID-19 pandemic, demonstrating that he is not serving a typical, day for day sentence, but a sentence that is increasingly punitive and anxiety-inducing.

Furthermore, Mr. Nixon's family circumstances have changed since his sentencing. Many families are now having to educate their children at home during the COVID-19 pandemic, particularly when the children are vulnerable due to unique medical issues. It is more important than ever that children have two parental figures in the home to assist with working full-time and allowing adequate time for childcare and education within the home. Seeing the difficulty his family has gone through at this time is deterrent enough for Mr. Nixon to remain on his current path of growth and rehabilitation. Further evidence of Mr. Nixon's release plan is forthcoming, as undersigned counsel was appointed to this case the same week of this filing's due date.

A reduction or modification of Mr. Nixon's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. In fact, refusing to reduce detained populations as medical professionals have recommended actually endangers the entire community and increases the rapid spread of the virus. The extraordinary and compelling circumstances presented by the uncontrolled

spread of COVID-19—compounded by the heightened risks faced by Mr. Nixon, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Mr. Nixon's period of supervised release awaiting him will ensure that he complies with the release plan discussed with his family. *See United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and []the Court will not hesitate to recommit him to prison should he again go astray.") The Court may also impose home confinement for a term equivalent to the remainder of his custodial sentence as well. 18 U.S.C § 3582(C)(1)(A). *See also United States v. Raia*, No. 2:18-CR-657, Dkt. No. 91 (D.N.J., May 7, 2020). Considering all of these emergency circumstances, the Court could find a combination of supervised release and/or home confinement which would be sufficient to ensure deterrence, protection of the public, and which would allow Mr. Nixon to seek alternative medical care.

## CONCLUSION

Mr. Nixon has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 15th day of November 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant

Attorney for the United States electronically at the following address:


      Lucy Partain Brown
      United States Attorney's Office - EDNC
      150 Fayetteville Street, Suite 2100
      Raleigh, NC 27601
      lucy.brown@usdoj.gov


This 15th day of November 2020.


      GUIRGUIS LAW, PA

      /s/ Nardine Mary Guirguis
      Nardine Mary Guirguis
      PANEL Attorney

20